**Ex parte Jean MATTHEWS, Appellant.**

**No. 176–95.**

Court of Criminal Appeals of Texas, En Banc.

Oct. 23, 1996.

Appeals after the trial court denied relief, claiming that prosecution on the indictment was barred by the two year statute of limitations applicable to aggravated perjury. Article 12.03(d), V.A.C.C.P.[1] The court of appeals dismissed the appeal for want of jurisdiction, holding that appellant could not challenge an indictment in a pre-trial writ of habeas corpus proceeding. *Ex parte Matthews*, 846 S.W.2d 152 (Tex.App.—Houston [1st Dist.] 1993). We reversed the court of appeals' decision and remanded, holding that a pre-trial writ was a proper vehicle for her complaint. *Ex parte Matthews*, 873 S.W.2d 40 (Tex.Cr.App.1994). On remand, the court of appeals held the trial court erred in failing to grant appellant's writ of habeas corpus. *Ex parte Matthews*, 892 S.W.2d 208 (Tex.App.—Houston [1st Dist.] 1995). We granted the State's petition for discretionary review to determine whether the court below erred in construing the limitations tolling provision, Article 12.05(a), to apply only to persons formally accused of an offense prior to the time they absent themselves from the state.[2] Tex.R.App.Pro., Rule 200(c)(2).

Richard Haynes, Ron S. Rainey, and Donald W. Rogers, Jr., Houston, for appellant.

William J. Delmore, III, Asst. Dist. Atty., Houston and Matthew Paul, State's Atty., Austin, for the State.

*OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW*

CLINTON, Judge.

Appellant was indicted for aggravated perjury, and she filed a pre-trial writ of habeas corpus. She appealed to the First Court of

I.

Appellant was indicted on January 8, 1991, for aggravated perjury. The indictment alleged that appellant lied about her qualifications as an expert witness on June 12, 1981, when she testified for the State in the capital murder trial of Phillip Tompkins. Appellant, who lives in Arizona, flew from Arizona to Texas to testify in the Tompkins trial. In that trial, she testified that she held a Ph.D. in psychology from Florida State University in Tallahassee. According to the State, appellant had no such degree at the time. After testifying, appellant left Texas, never to reappear until the grand jury returned the indictment. The State did not discover the alleged perjury until February or March of 1990, during a post-conviction writ of habeas corpus proceeding in the Tompkins case. The indictment alleges appellant does not

1. Unless otherwise indicated, all references to articles are to those in the Texas Code of Criminal Procedure.

2. Article 12.05(a) provides:

The time during which the accused is absent from the state shall not be computed in the period of limitations.

hold a Ph.D. in psychology from Florida State University.

Appellant filed a pre-trial writ of habeas corpus asserting that the statute of limitations had run in the 10 years between the alleged perjury and the return of the indictment. Appellant argued that the term "accused" in Article 12.05(a) means a person against whom the State has brought formal charges. Since she had not been formally charged with a crime by the time she left Texas, the tolling provision of Art. 12.05(a) did not apply to her. The court of appeals agreed with appellant and granted relief. We will affirm.

## II.

### A.

 The court of appeals held that Article 12.05(a) does not operate to toll the statute of limitations until the citizen has been "formally accused."[3] *Ex Parte Matthews*, 892 S.W.2d at 211. In its petition for discretionary review, the State asserts that Article 12.05(a), so construed, will have practically no "utility." It is usually the case, the State argues, that a defendant becomes "the accused" for the first time by virtue of an indictment or information and complaint. In those cases the limitations period will already be tolled under Article 12.05(b).[4] The State argues that it more fully effectuates Article 12.05(a) to construe "the accused" to mean simply the person *now* accused of a crime. That is to say, the statute of limitations tolls whenever a person who commits a crime

leaves Texas, regardless of whether he has been charged and regardless of whether he even knows he may be suspected of the commission of a crime. Notwithstanding what the State describes as the limited utility of the court of appeals holding, we are not persuaded by the State's arguments.

### B.

 Statutes of limitation are acts of grace in that the sovereign surrenders its right to prosecute (or its right to prosecute at its discretion); thus they are considered to be equivalent to acts of amnesty. *Vasquez v. State*, 557 S.W.2d 779, at 781 (Tex.Cr.App. 1977). Statutes of limitation are to be construed liberally in favor of the accused; the burden is on the State to show the offense was committed within the period of limitation. *Vasquez v. State, supra*, at 783; *White v. The State*, 4 Tex.App. 488 (1878); see generally cases collected in 1 Branch's Annotated Penal Code (2nd Edition) § 661, at 639.

The period of limitation for presentment of charging instruments begins with the day of commission of the offense and runs to the limits in terms of years respectively prescribed in Articles 12.01, 12.02 and 12.03. In the instant cause of *aggravated* perjury the period is *two* years, that being the same period as perjury. Article 12.03(d) (an offense titled "aggravated" carries the same limitation period as primary crime).

 Quite obviously the intent and purpose of statutes of limitation is to require that an accused be prosecuted on a charging

---

**3.** What the court of appeals meant by "formally accused" is unclear. Arguably the statutory term, the "accused" might embrace situations other than accusation by indictment, information, or complaint. *Ex parte Matthews*, 892 S.W.2d at 209, 211. Most likely the court refers only to those formal charging instruments. *Ex parte Matthews*, 892 S.W.2d at 210.

If the court intended the latter definition, the opinion results in a logical absurdity. The statute of limitations is tolled, pursuant to Article 12.05(b), if a person is charged by information, indictment, or complaint. If "accused" in Article 12.05(a) is interpreted to mean "a person charged by information, indictment, or complaint," Articles 12.05(a) and (b) would be redundant. Article 12.05(a) would toll the statute of limitations for all those charged by information,

indictment, or complaint who at some point subsequent to the filing leave Texas; while Article 12.05(b) already tolls the limitations period automatically upon filing of the charging instrument, regardless of whether the "accused" has left the state. Article 12.05(a) would thus be a subset of Article 12.05(b) and would be superfluous. It would indeed be absurd to interpret a statute to achieve a superfluous result. It is a cardinal rule of statutory construction that the whole of a statute should be given effect. E.g., *Heckert v. State*, 612 S.W.2d 549, 552–53 (Tex.Cr.App. 1981).

**4.** Article 12.05(b) provides:

The time during the pendency of an indictment, information, or complaint shall not be computed in the period of limitation.

instrument filed within the period prescribed for the offense alleged, subject of course to germane tolling provisions. There is no authority in law to prosecute a citizen after the period of limitation has intervened. *Vasquez v. State, supra,* at 783, n. 6; *Ex Parte Hoard,* 63 Tex.Cr.R. 519, 140 S.W. 449, at 451 (1911).

The instant offense was committed June 12, 1981. Manifestly an indictment filed after June 14, 1983, was barred by limitation—unless tolled for the period of time during which applicant *qua* "the accused" was absent from the state, as the prosecution here alleged. Article 12.05(a).[5] The issue thus turns on when applicant became "the accused." Our judgment is never—validly, that is.

The court of appeals agreed with the State that she would not attain that status until "charged by indictment or information." It also spoke of a "formal accusation," meaning "complaint, information or indictment"—a charging instrument upon which trial is authorized and may be conducted. The State contends that where a formal accusation has not been filed, absence from the state will toll the period of limitations.

In our view, that newly conceived notion ignores both the language of Article 12.05(a) as well as its predecessors and caselaw construing and applying them, and would defeat the beneficent intent and studied purpose of statutes of limitation—essentially insisting that prosecutorial authorities exercise all due diligence obtaining and presenting a formal accusation of an offense against a person—ordinarily one who is already a criminally "accused."

### C.

■ Practically from the beginning the State of Texas granted amnesty from prosecution in statutes of limitation in terms that basically continue today. The early predecessors of Article 12.05(a) provided thusly:

> "The time during which a person *accused* of an offense *IS* absent from the State shall not be computed in the period of limitation."

O.C. 187; C.C.P. 1879, article 202; C.C.P. 1895, article 221; C.C.P. 1911, article 231. The language was later modified somewhat to read as it does today. C.C.P. 1925, article 183. But as the State says, "The primary goal of statutory construction is always the ascertainment and effectuation of the legislative intent that existed at the time of the enactment of the statute in question." State's Brief, at 4. See *Ex parte Morin,* 172 Tex.Cr.R. 322, 356 S.W.2d 689 (1962) (preindictment time during which accused escaped from jail and fled to California and thus was absent from the state shall not be computed); *Morin v. State,* 171 Tex.Cr.R. 138, 346 S.W.2d 327 (1961) (following his arrest defendant escaped jail and remained at large in California some four years); see also *Ex parte Ward,* 560 S.W.2d 660 (Tex.Cr. App.1978) (Douglas, J., dissenting, at 664–665) (no precedent in Texas that filing indictment or information is only method of interrupting statute of limitation for felony offenses; Court should hold that filing felony complaint in justice court will toll running of statute under Article *12.05(b) & (c)* ).

Concomitantly, the penal codes defined the term "accused" substantially as follows:

> "The word 'accused' is intended to refer to any person who, in a legal manner, is held to answer for any offense, at any stage of the proceeding, *or against whom complaint* in a lawful manner is made *charging an offense,* including all proceedings from the order for arrest to the final execution of the law[.]"

---

5. In pertinent part the indictment alleges:
 "... [S]uch false sworn statement ... was material to said proceeding in that it could have affected the course and outcome of said proceeding by *increasing the credibility of [applicant's] testimony* before the jury at the penalty stage of said official proceeding."
 "... [T]hat after the offense was committed as alleged above [June 12, 1981] the defendant was *absent from the State of Texas for a period*

of three years, namely, that she was not present within the State of Texas for a cumulative period of three years, excluding the date on which the offense was committed alleged above and the date on which the indictment was presented herein, to-wit, January 28, 1991."
(All emphasis above and throughout this opinion is mine unless otherwise indicated.)

Article 23, P.C.1925; see also article 25, P.C. 1911; article 25, P.C. 1895; article 25, P.C. 1879; article 24, O.C.

■ Accordingly, early on the Court discerned that a person is "accused" from the time any "criminal action" is commenced against him, and "a legal arrest without a warrant; a complaint to a magistrate; and a warrant legally issued" among others are examples of "accusation," under any one of such proceeding a person is said to be "accused." *Brannan v. State*, 44 Tex.Cr.R. 399, 72 S.W. 184, 185 (1903). Similarly, because one is not "accused" unless charged with an offense, a magistrate cannot conduct an examining trial until that party is under arrest and appears in court. *Brown v. State*, 55 Tex.Cr.R. 572, 118 S.W. 139, at 144 (1909).

The point for the instant situation is that from the time applicant left Texas and returned to her home in Arizona until expiration of the period of limitation, she was not "the accused" within the meaning contemplated by Article 12.05(a). The prosecution was free to toll running of the statute of limitation by simply filing and pursuing preindictment whatever accusatory pleading or paper it preferred for that purpose. Having failed to do so, the prosecution allowed the applicable statute of limitation to run unabated. Appellant is entitled to the amnesty granted by the Legislature to all citizens similarly situated.

### III.

Because it comports with legislative intent and purpose consistently manifested and judicially implemented since at least 1857, we hold that Article 12.05(a) operates to toll the statutory limitations period only when the citizen has been effectively accused of an offense. Appellant cannot be haled into court to answer this stale charging instrument.

Accordingly, the judgment of the court of appeals granting appellant's writ of habeas corpus is affirmed.

1. All emphasis is supplied unless otherwise indi-

BAIRD, Judge, concurring.

At issue in the instant case is the statutory interpretation of Tex.Code Crim. Proc. Ann. art. 12.05(a), which provides:

> The time during which the *accused* is absent from the state shall not be computed in the period of limitation.[1]

### I.

In *Boykin v. State*, 818 S.W.2d 782 (Tex. Cr.App.1991), we stated the "lawmaking" function is assigned to the Legislature and the "law interpreting" function is assigned to the judiciary. Tex. Const. art. II, § 1. In discharging this assignment, the judiciary "seek[s] to effectuate the 'collective' intent or purpose of the legislators who enacted the legislation." *Boykin*, 818 S.W.2d at 785. *See also, Camacho v. State*, 765 S.W.2d 431 (Tex.Cr.App.1989). To determine legislative intent, we focus first on the literal text of the statute because this is the only *definitive* evidence of what the legislators intended when the statute was enacted into law. *Boykin*, 818 S.W.2d at 785. If the statute is clear, the inquiry is over. However, if the statute is not clear, *Hines v. State*, 906 S.W.2d 518, 521 (Tex.Cr.App.1995), but rather is ambiguous, susceptible to multiple interpretations, *Murdock v. State*, 870 S.W.2d 41, 42 (Tex.Cr.App.1993), and *Muniz v. State*, 851 S.W.2d 238, 244 (Tex.Cr.App.1993), or would lead to an absurd result, *Basden v. State*, 897 S.W.2d 319, 321 (Tex.Cr.App.1995), then and *only then* should courts consider "extratextual factors" to determine legislative intent. These factors may include executive or administrative interpretations of a statute, *Boykin*, 818 S.W.2d at 786, consequences of construction, *State v. Mancuso*, 919 S.W.2d 86 (Tex.Cr.App.1996), practice commentaries, *Hines*, 906 S.W.2d at 521, legislative history, *Basden*, 897 S.W.2d at 322, and *Murdock*, 870 S.W.2d at 41, the rules of statutory interpretation, Tex. Gov't Code Ann. § 311 *et seq.*, and/or legislative floor debate, *Dillehey v. State*, 815 S.W.2d 623, 625 (Tex.Cr.App.1991). If a statute is subject to two interpretations, one reasonable and the other unreasonable, we prefer the former interpretation. *Muniz*, 851 S.W.2d at 244.

cated.

Finally, when the Legislature meets, after a particular statute has been judicially construed, without changing the statute, we presume the Legislature intended the same construction should continue to be applied to the statute. *Marin v. State*, 891 S.W.2d 267, 271–272 (Tex.Cr.App.1994); *Moore v. State*, 868 S.W.2d 787 (Tex.Cr.App.1993); *Watson v. State*, 532 S.W.2d 619, 622 (Tex.Cr.App. 1976); *and State v. Daugherty*, 931 S.W.2d 268, 273 (Tex.Cr.App.1996)(Baird, J., concurring).

## II.

A majority of the Court of Appeals interpreted art. 12.05(a) to require proof that the defendant was "formally accused" of committing a crime *at the time* she left the State. *Ex parte Matthews*, 892 S.W.2d 208, 210–211 (Tex.App.—Houston [1st Dist.] 1995). The dissent, however, would have interpreted "accused" to mean the person *now* accused. *Id.*, 892 S.W.2d at 212 (Oliver-Parrott, C.J., dissenting). Thus, this case presents a classic example of a statute's use of a term which is not plain but is susceptible to multiple interpretations. In these situations the judiciary is required to consider extratextual factors to determine the legislative intent when the statute was enacted. *See* I., *supra.*

Tex. Gov't Code Ann. § 311 *et seq.*, commonly referred to as the Code Construction Act, is intended to aid in statutory interpretation. Id. §§ 311.002 and 311.003. The Act instructs:

(a) Words and phrases shall be read in context and construed according to the rules of grammar and *common usage.*

(b) Words and phrases that have acquired a *technical or particular meaning*, whether by legislative definition or otherwise, shall be construed accordingly.

*Id.* § 311.011. Therefore, under the Act the Court of Appeals was asked to consider the common usage of accused and determine if that term has acquired a technical or particular meaning.

To determine its common usage, the Court of Appeals considered the definitions of "accused" provided by Webster's 3rd New International Dictionary,[2] The English Oxford Dictionary,[3] and the Black's Law Dictionary.[4] *Matthews*, 892 S.W.2d at 210–211. The Court of Appeals next considered whether "accused" had acquired a "technical or particular meaning."[5] In *Holloway v. State*, 780 S.W.2d 787 (Tex.Cr.App.1989), we adopted the definition of accused employed by the Supreme Court in *Michigan v. Jackson*, 475 U.S. 625, 632, 106 S.Ct. 1404, 1409, 89 L.Ed.2d 631 (1986):

[A]fter a formal accusation has been made ... a person who had previously been just a "suspect" has become an "accused" within the meaning of the Sixth Amendment....

*Holloway*, 780 S.W.2d at 793. *See also, McCambridge v. State*, 778 S.W.2d 70 (Tex. Cr.App.1989); *and, Nichols v. State*, 754 S.W.2d 185 (Tex.Cr.App.1988).

Thus, the Court of Appeals reasoned that under either the "common" or "technical" definition, no person is "accused" unless and until there is a formal accusation of criminal wrongdoing. Applying the Court of Appeals' interpretation, this definition, art. 12.05(a) reads as follows: "The time during which the

---

2. Webster's 3rd New International Dictionary 14 (1976) defines accused as "one charged with an offense, esp: the defendant in a criminal case ..."

3. The English Oxford Dictionary, p. 94 (2d ed.1989) defines accused as "[one] charged with a crime or fault."

4. Blacks Law Dictionary 23 (6th ed.1990) defines accused:

The generic name for the defendant in a criminal case. Person becomes "accused" within meaning of guarantee of speedy trial *only at point at which either formal indictment*

*or information has been returned* against him, or when he becomes subject to actual restraints on his liberty imposed by arrest, which ever first occurs.
*Id.*

5. The Court of Appeals also considered the 1925 Texas Penal Code's definition of accused:

[A]ny person who, in a legal manner, is held to answer for an offense, at any stage of the proceeding, or against whom complaint in a lawful manner is made charging an offense, including all proceedings from the order for arrest to the final execution of the law. The word "defendant" is used in the same sense.

[*person who has been formally charged with a crime*] is absent from the state shall not be computed in the period of limitation."

### III.

The following graphic illustrates a "time line" of a hypothetical criminal prosecution:

As noted above, the statute of limitations is automatically tolled when a person is "formally" charged by an indictment, information or a complaint is filed. Art. 12.05(b)[6]. Therefore, if we held, as the Court of Appeals did, that a person does not become an "accused" until an indictment, information, or complaint is filed, art. 12.05(a) would be meaningless. I agree with the majority that the Legislature could not have intended such a construction. *Childress v. State,* 784 S.W.2d 361, 364 (Tex.Cr.App.1990); *and, Sattiewhite v. State,* 786 S.W.2d 271, 289–290 (Tex.Cr.App.1989). Therefore, the Legislature could not have intended the construction adopted by the Court of Appeals. However, we still must determine when one becomes an "accused" under art. 12.05(a).

The majority correctly rejects the State's contention that "accused" simply refers to one who is later charged with a criminal offense. *Ante,* 933 S.W.2d at 137. Under such a construction, the statute of limitations would be tolled every time a suspect leaves the state. And, if the suspect resided out of state, there would be no statute of limitations.[7] As the Court of Appeals noted, the Legislature could not have intended "the State to delay prosecution until it discovered a crime." *Matthews,* 892 S.W.2d at 211. Such a construction thwarts the very intent and purposes of a statute of limitations. *Ante,* 933 S.W.2d at 137 ("[T]hat prosecutorial authorities exercise all due diligence obtaining and presenting a formal accusation of an offense against a person.").

6. Tex.Code of Crim. Proc. 12.05(b) provides:
 The time during the pendency of an indictment, information, or complaint shall not be computed in the period of limitation.

7. Such a construction would violate the Equal Protection Clause of the Fourteenth Amendment.

I would hold that, for the purposes of art. 12.05(a) one becomes an "accused" at the time of arrest. Only at this point does one become aware that he/she is suspected and may be charged with an offense. The underlying purposes of the statute of limitations are protected and both parties have the ability to diligently investigate and prepare their respective cases. Therefore, I would hold that, under art. 12.05(a), the statute of limitations is tolled when one is absent from the state after having been arrested.[8]

### IV.

Appellant allegedly perjured herself on June 12, 1981. On that date she was a resident of Arizona who came to Harris County to testify on behalf of the State. Appellant was not indicted until January of 1991, a date beyond the applicable limitation period. Moreover, appellant was not arrested within the statute of limitations. Therefore, applying the above analysis, the limitation period was not tolled by art. 12.05(a).

With these comments, I join only the judgment of the Court.

WHITE, Judge, dissenting.

In its opinion on remand, the Court of Appeals decided that the tolling provisions of TEX.CODE CRIM.PROC.ANN. art. 12.05(a) do not apply to persons who have absented themselves from this State until they have been formally accused of committing a crime. *Ex parte Boetscher,* 812 S.W.2d 600, 603–604 (Tex.Cr.App.1991).

8. Here I must part company with the majority who would apparently allow the limitation period to be tolled by the mere *issuance* of an arrest warrant.

*Ex parte Matthews,* 892 S.W.2d 208, at 211 (Tex.App.—Houston [1st Dist.] 1995). The State petitioned us to review whether the Court of Appeals erred when it construed Art. 12.05(a). The majority has decided to affirm the decision of the Court of Appeals. I dissent.

In her dissenting opinion, Justice Oliver–Parrot stated

> "The appellant is the criminal defendant and the one accused. The language of the statute [1] refers to the person who is now the "accused." There is nothing to suggest that the accused had to be charged before leaving the state. The appellant allegedly committed a crime and left the state. We should hold the tolling statute applies once a person commits a crime and leaves the state. Although it does not appear the appellant left the state to avoid detection, we should be compelled to apply the tolling statute."

*Ex parte Matthews,* 892 S.W.2d, at 212.

The Code Construction Act points out that "words and phrases shall be read in context and construed according to the rules of grammar and common usage." See TEX. GOVT.CODE ANN. § 311.011(a). As Justice Oliver–Parrot pointed out, the word "accused" means only "a criminal defendant, the person who now stands charged by indictment or information." *Ex parte Matthews,* 892 S.W.2d, at 212; Oliver–Parrot, J., dissenting. Art. 12.05(a) does not state the person must be accused before they leave or flee. "It is not for the courts to add or subtract from such a statute." *Boykin v. State,* 818 S.W.2d 782, at 785 (Tex.Cr.App. 1991); citing *Coit v. State,* 808 S.W.2d 473, at 475 (Tex.Cr.App.1991). The decision of the majority opinion below that an individual must attain the status of being an accused prior to the time they have left, or fled from, the State, is an attempt to write something into the text of Art. 12.05(a) that was not there when the Legislature finished drafting the statute.

The lower court decision which the majority lets stand interprets Art. 12.05(a) so the statute does not include people who commit crimes and flee from, or leave, the State before an investigation and formal charges have caught up to them. So long as that individual remains beyond the reach of the local authorities in another state or country, the statute of limitations for their crimes will not have been tolled and will continue to run while they remain uncharged.

Therefore, I respectfully dissent to the majority's decision to affirm the decision of the First Court of Appeals.

---

1. Art. 12.05(a) reads as follows:

"The time during which the accused is absent from the state shall not be computed in the period of limitation."